# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LANDA MOBILE SYSTEMS, LLC, an Oklahoma Limited Liability Company, | )<br>)<br>) |
| Plaintiff, | ) Case No. 4:18-cv-200-TCK-FHM |
| v. | )<br>)<br>) |
| WILLIAMS COMMUNICATIONS, INC., a Florida Corporation, | )<br>)<br>) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant Williams Communications, Inc. ("Defendant")'s Motion to Dismiss (Doc. 3) and Defendant's Motion to Stay Discovery (Doc. 24). For the reasons discussed below, Defendant's Motion to Dismiss (Doc. 3) is **GRANTED** and Defendant's Motion to Stay Discovery (Doc. 24) is **DENIED AS MOOT**.

**I.    Factual Background**

The instant case arises out of the events of no more than eight weeks and 20 instances of contact in late 2017. (Doc. 12-1.) At some point in September 2017, Defendant, a Florida corporation, contacted Landa Mobile Systems, LLC. ("Plaintiff"), seeking to purchase three of the mobile communication towers ("towers") that Plaintiff manufactures and sells. (Doc. 2-2, ¶ 7-9.) Plaintiff is an Oklahoma LLC with a manufacturing facility in Tulsa, Oklahoma and, at the time at issue in this case, a "Headquarters" office, located in Fayetteville, Arkansas. (Docs. 12-2; Doc. 3-3.) The towers which Defendant sought to purchase were specific, prefabricated items in Plaintiff's inventory, and were located at Plaintiff's manufacturing facility in Tulsa, Oklahoma.

However, when Defendant contacted Plaintiff, it used the "sales" phone number associated with Plaintiff's "Headquarters" office, located in Fayetteville, Arkansas. (Doc. 3-3; Doc. 3-4.)

On September 29, 2017, Plaintiff transmitted a quote for three towers to Defendant. (Doc. 3-4.) On October 5, 2017, Defendant submitted a purchase order in the amount of $207,739.80, for the three towers. (Doc. 2-2, pg. 7.) Defendant also sent Plaintiff a $5000 deposit to hold the towers. (Doc. 3-1, ¶ 16-19.) Later, on October 11, 2017, Defendant wired partial payment for the towers in the amount of $104,857, which the outgoing wire transfer form described as a "deposit on purchase of towers." (Doc. 12-1, ¶ 23; Doc. 13-1.) Defendant wired this partial payment to an Arkansas bank. (Doc. 3-1, ¶ 23; Doc. 13-1.) Plaintiff subsequently sent Defendant an invoice for $99,560, which it claimed was the balance owed on the purchase of the three towers. (Doc. 12-1, ¶ 24.) Finally, on October 23, 2017, Defendant advised Plaintiff that it would not take delivery of the towers, and asked Plaintiff to resell the towers and issue Defendant a refund. (Doc. 12-1, ¶ 25.)

## II.    Procedural History

On March 1, 2018, counsel for Defendant sent a letter to Plaintiff, alleging that Plaintiff deprived Defendant of $104,857 and demanding the tender of the "statutorily-trebled amount" of $314,571 within thirty days.[1] (Doc. 2-2, pg. 11.) Approximately one week later, on March 9, 2018, Plaintiff filed a Petition in the District Court of Tulsa County requesting declaratory judgment as to the parties' right under the contract for the sale and shipping of the towers. (Doc. 2-2.) Defendant removed the case to this court on April 11, 2018 pursuant to this Court's diversity

---

[1] It is not clear whether Plaintiff argues that Defendant's demand letter itself (Doc. 2-2, pg. 11) is a contact with Plaintiff in the forum state. However, because "jurisdiction involves a court's ability to preside over a lawsuit—not a party's public posturing early on in a dispute," the Court has not considered the demand letter to be a contact with Plaintiff in the forum state. *See Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1282 n.9 (10th Cir. 2005).

jurisdiction, and on the same date, filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Docs. 2 and 3.)

**III.    Rule 12(b)(2) Standard**

Personal jurisdiction refers to the power that a court has to make a decision regarding the party being sued in a case. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Bruner v. Midland Funding, LLC*, No. CIV-16-1371-D, 2018 U.S. Dist. LEXIS 12186, *7, n.4 (W.D. Okla. Jan. 25, 2018). A plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant. *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)(internal citations omitted). However, because neither party has requested an evidentiary hearing or additional discovery, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat a motion to dismiss for lack of personal jurisdiction. *Id*. To make this prima facie showing, the plaintiff must demonstrate, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *Id*. Additionally, if the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor. The allegations in the complaint must also be taken as true to the extent they are uncontroverted by the defendant's affidavits. *See Behagen v. Amateur Basketball Assoc.*, 744 F.2d 731, 733 (10th Cir. 1984). Finally, even if the defendant makes a contrary factual presentation, a plaintiff can meet its burden if it successfully makes a prima facie showing. *Id.*

Because the instant case is a diversity action, Plaintiff must show that "jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). Oklahoma's long arm statute for establishing specific jurisdiction, however, sets the limits of the state's jurisdiction over a nonresident to the outer limits permitted by the United States Constitution. *See* OKLA. STAT. tit.

12 sec 2004(F). Consequently, the Court must only determine whether an exercise of personal jurisdiction in this case is constitutional.

The parties agree that the only type of personal jurisdiction that the Court might constitutionally exercise is specific jurisdiction. (Doc. 3, pg. 6; Doc. 12, pg. 6.) The specific jurisdiction constitutional inquiry has two steps. First, Defendant must have "minimum contacts" with Oklahoma such that it has "purposefully avail[ed]" itself of the protections or benefits of Oklahoma law and "should reasonably anticipate being haled into Court there." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). Although agreements and contracts alone are likely to be insufficient to establish such minimum contacts, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* (internal citations omitted).

If Defendant is found to have the requisite minimum contacts with Oklahoma, the Court must determine whether the exercise of jurisdiction over Defendant offends "traditional notions of fair play and substantial justice." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The Defendant bears the burden, at this stage, to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167 (10th Cir. 2011) (internal citations omitted).

IV. **Minimum Contacts Analysis**

Whether the Defendant has minimum contacts sufficient to support specific jurisdiction depends on the "particular facts of each case." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004). However, in evaluating whether the Defendant has purposefully availed itself of the protections or benefits of Oklahoma, the Court will look to whether Defendant has "purposefully directed" his activities at residents of the forum, and whether the litigation results

4

from alleged injuries that "arise out of or relate to" those activities. *See TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) quoting *Burger King Corp.*, 471 U.S. at 472. In a contract case, relevant factors for assessing minimum contacts include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

### A. Terms of Contract

The terms of the parties' contract do not demonstrate that Defendant has purposefully availed itself of the protections or benefits of Oklahoma law. For example, there is no indication that the parties agreed either to the jurisdiction of Oklahoma courts or to the application of Oklahoma law to any disputes between them. None of the documents that are now before the Court contain any terms indicating that a dispute between the parties would be subject to Oklahoma law or would be adjudicated in Oklahoma courts. Further, though Plaintiff alleges its standard contract terms state that Oklahoma law applies to this dispute (Doc. 12, pg. 9), those terms are not in any documents before the Court, and no affidavits or written documents before the court indicate that those terms have been incorporated into the parties' contract. Because Plaintiff's allegation that Oklahoma law applies to this dispute is not supported by an affidavit or other written documents, the Court cannot accept this fact as part of the Plaintiff's prima facie case. *See OMI Holdings*, 1409 F.3d at 1091.

### B. Prior Negotiations, Contemplated Future Consequences, and Parties' Actual Course of Dealing

Similarly, the parties' contract and dealings demonstrate that Defendant has not purposefully directed its activities at the residents of Oklahoma such that Defendant could reasonably anticipate being sued in Oklahoma. The parties' contract, standing alone, cannot establish purposeful availment sufficient to establish minimum contacts. *See TH Agric. &*

*Nutrition*, 488 F.3d at 1287; *Burger King*, 471 U.S. at 478. Similarly, though the fact that Defendant solicited a contract with Plaintiff may be evidence of purposeful availment, that evidence alone is not conclusive. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005).

In cases where a contract has created personal jurisdiction, the contract required performance of personalized services over a period of at least several months, and both the negotiations and performance required the Defendant to contact a Plaintiff who was physically located in Oklahoma. *See, e.g.*, *Pro Axess, Inc.*, 428 F.3d 1270 (finding purposeful availment where Defendant solicited Plaintiff's assistance in procuring sunglasses frames, requiring a continued relationship for Plaintiff to provide services, a great deal of direct communication between the parties, and for the Defendant to conduct a number of activities in the jurisdiction); *Benton*, 375 F.3d at 1076 (finding minimum contacts in a "very close case" regarding a contract for a business relationship where transactions took place partially in the jurisdiction and partially in Canada, and where Defendant pursued the business relationship, sent representatives to the jurisdiction to maintain and further the relationship, and had voluntarily conducted business with Plaintiff for many years prior at the time of the events at issue); *OMI Holdings*, 149 F.3d at 1095 (finding minimum contacts that were "qualitatively low on the due process scale" where Defendant contracted to defend the insured in the forum state).

By contrast, in this case, the parties had never done business with each other before the contract at issue in this litigation. Further, though Defendant pursued a contract with Plaintiff, an Oklahoma company, Defendant was only in contact with Plaintiff's Headquarters office, located in Fayetteville, Arkansas, not with any party physically located in Oklahoma. Similarly, these contacts were much more limited in both volume and length of time than those in which Courts have found personal jurisdiction. Rather than negotiations and performance taking place over a

period of several months, the entirety of the parties' business relationship took place over no more than eight weeks, and included only approximately 20 total instances of contact. Moreover, the contract was not for services at all, or even for an extended period of work, but for the one-time purchase of three prefabricated towers. Neither the documents exchanged between the parties, nor their actual course of conduct, indicates that they contemplated a relationship that would last longer than Defendant's completed payment and Plaintiff's completed delivery of the towers. Accordingly, the parties' contract is not sufficient to establish that Defendant purposefully directed its activities at the residents of Oklahoma such that Defendant could reasonably anticipate being sued in Oklahoma.

Similarly, Defendant's communication with Plaintiff is also not sufficient to demonstrate minimum contacts. "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Soma Med. Int'l. v. Std. Chtd. Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999)(internal citations omitted). In *Soma*, the Court held that in a suit between a corporation and its bank, which was incorporated under the laws of Great Britain, the defendant's communication with the plaintiff in the forum state, including a limited number of faxes and other written communications concerning the account, as well as a few wire transfers of funds, were not sufficient to establish minimum contacts. *See id.* In this case, Defendant's contacts are even less persuasive—though Defendant's contacts with Plaintiff also consisted of a limited number of written communications, and a few payments, these contacts with Plaintiff took place not in Oklahoma, but in Arkansas. Defendant communicated with Plaintiff through the Arkansas Headquarters office, and wire transferred funds to an Arkansas bank. Accordingly, Defendant's communication with Plaintiff is not sufficient to establish minimum contacts.

Finally, Plaintiff has relied heavily on *Mastercraft Floor Covering, Inc. v. Charlotte Flooring Inc.*, arguing that, like in *Mastercraft*, Defendant's voluntary election to do business with

an Oklahoma corporation, and the stream of communications that Defendant maintained with that Oklahoma corporation, constituted purposeful availment of the privilege of conducting business in Oklahoma. *See* 2013 OK 87, 313 P.3d 911 (Okla. 2013). However, *Mastercraft* has more in common with other cases where federal courts have found minimum contacts than with the case at hand. In *Mastercraft*, the parties' contract contemplated a twenty-month total relationship and for twelve months, Defendant sent payments to Plaintiff in Oklahoma. Additionally, during the course of this relationship, the parties exchanged extensive communications, including 30-40 phone calls and 140 emails, all apparently necessary to or facilitating the performance of the contract. By contrast, as noted above, the parties in this case did not contemplate an ongoing relationship, but rather a straightforward single exchange of money for goods. Defendant also sent partial payment to a bank in Arkansas, not Oklahoma, unlike the Defendant in *Mastercraft*. Moreover, the parties' entire business relationship lasted only approximately eight weeks and did not involve anything close to *Mastercraft*'s level of contact with someone in Oklahoma, or with Plaintiff at all. Accordingly, *Mastercraft* does not require that the Court exercise personal jurisdiction over Defendant in this case.

Because the Court has found that Plaintiff has not made a prima facie case that Defendant has purposefully directed its activities at the residents of Oklahoma, the Court need not determine whether the alleged injuries arise out of or relate to Defendant's in-state activities or whether an exercise of jurisdiction would offend traditional notions of fair play and substantial justice.

**V.     Conclusion**

Because Defendant has more limited contacts with the state of Oklahoma than existed in other cases where Courts have found an exercise of personal jurisdiction appropriate, this Court's exercise of personal jurisdiction over Defendant would violate the Due Process Clause's

requirement that, to be sued in Oklahoma, the Defendant must have certain minimum contacts such that it could reasonably anticipate being haled into an Oklahoma court.

Accordingly, **IT IS ORDERED** that:

Defendant's Motion to Dismiss (Doc. 3) is **GRANTED**.

Plaintiff's Motion for Order Authorizing Remote Video Deposition of Corporate Representative (Doc. 22) is **DENIED AS MOOT**.

Defendant's Motion to Stay Discovery (Doc. 24) is **DENIED AS MOOT**.

Plaintiff's Motion to Compel (Doc. 27) is **DENIED AS MOOT**.

**IT IS THEREFORE ORDERED** that Plaintiff's case is **DISMISSED**. A separate judgment of dismissal is entered herewith.

**Dated this 28th day of January, 2019.**

_____
**TERENCE C. KERN**
**United States District Judge**